## POLLOCK v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit. July 22, 1929.

No. 2830.

John Philip Hill, of Baltimore, Md. (John E. Magers, of Baltimore, Md., on the brief), for appellant.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md.

Before PARKER and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

PER CURIAM. This is an appeal by David Pollock, the defendant below, from a judgment of the District Court of the United States for the District of Maryland, at Baltimore, entered on the 19th day of November, 1928, imposing a sentence of 18 months' imprisonment in the United States penitentiary at Atlanta, upon a verdict of guilty on the first count of an indictment charging conspiracy to transport intoxicating liquors in violation of the National Prohibition Act. A second count in the indictment charging a conspiracy to possess intoxicating liquors was nolle prossed before the case was given to the jury.

Included in the indictment with the defendant were James M. Geisey, Harvey Jones, Milton Hawkins, James Morsell, Harry Bessick, and George Bowden. The defendant Pollock was tried jointly with Geisey, Jones, Hawkins, and Morsell. Bessick and Bowden were not in custody. Pollock, Jones, Hawkins, and Morsell were found guilty, and Geisey was found not guilty by the jury.

A distillery, located at Tannery, Carroll county, Md., was robbed on the night of January 2, 1926, and a large quantity of whisky was removed therefrom by means of trucks. There was evidence to the effect that the guards at the distillery were captured one by one, and tied up in the office, while the whisky was being removed. A man passing the distillery at the time was also seized and bound. Early the following morning a Reo truck was seen at a filling station, at Hampstead, Carroll county, Md., loaded with five barrels said to be filled with whisky. The driver of the truck was identified as Hawkins, one of the defendants. The truck, when seen at the filling station, bore a license which had been issued for a Dodge truck, in the name of Harry Cohen, and it was proven that appellant, Pollock, applied for this license in the name of Harry Cohen. The defendant Pollock conducted a garage in the city of Baltimore, together with his brother, Harry Pollock. The garage was known as the "Wilson Street Garage," and both the Dodge and Reo trucks in question were afterward found in this garage, and were kept there. Hawkins, Jones, and Geisey were indicted for conspiracy, and tried in June, 1928; the trial resulting in a hung jury. The defendant Morsell was joined in the indictment, but was not in custody, and was, therefore, not tried at this time; but it was

proven that defendant Pollock, under the name of Cohen was sending him money in the city of Philadelphia, and that at one time the defendant Pollock wired Morsell to stay away from Baltimore until he (Pollock) sent for him. The several colored men indicted were used at the Pollock garage, as drivers of trucks, including the Dodge and Reo trucks above mentioned.

After the mistrial the parties were reindicted, and for the first time the defendant Pollock was included in the indictment for conspiracy Appellant was identified by an employee of the telegraph office as sending money to Morsell, under the name of Cohen. The Reo truck seen loaded with liquor the morning after the distillery was robbed was bought by Harry Pollock, brother of the appellant, and was titled by David Pollock, under the fictitious name of Wager. This truck was kept in the Pollock garage, was usually driven by one of the defendants in the case, and was finally captured by a prohibition officer, loaded with beer.

There are 18 assignments of error, the first of which deals with the ruling of the court in overruling the demurrer to the indictment. An examination of the indictment leads to the conclusion that it was sufficient. "The rules of criminal pleading do not require the same degree of detail in an indictment for conspiracy, in stating the object of the conspiracy, as if it were one charging the substantive offense." Thornton v. United States, 271 U. S. 414, 46 S. Ct. 585, 588, 70 L. Ed. 1013. To the same general effect, see Fletcher v. United States, 42 App. D. C. 53; United States v. Cella, 37 App. D. C. 423; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278.

The second assignment of error deals with refusal of the defendant's motion to grant a severance. This motion was properly denied by the court, and this point does not seem to be relied upon by counsel for appellant.

Assignments 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 relate to the admission of evidence during the course of the trial. A careful examination of all the points raised does not disclose any error in the rulings of the trial court.

Assignments of error 16, 17, and 18 relate to the ruling of the court in refusing to take the case from the jury, in overruling defendant's motion to direct a verdict for the defendant, and in refusing the defendant's motion for a new trial. On all these points the action of the trial court was proper.

Exceptions were also taken to the refusal of the court to grant certain instructions

asked on behalf of the defendant, but an examination of these instructions shows that they were properly refused.

There was ample evidence offered on behalf of the government to allow the case to go to the jury, and to sustain the verdict of guilty. The charge of the learned judge below was fair, and clearly and correctly stated the law as applicable to the facts of the case. There was no error in the trial, and the judgment of the court below is accordingly affirmed.